## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

RONALD K. HALKMON, JR.,            )
                                   )
      Plaintiff,             )
                                   )
    v.                          )            No. 4:25-cv-00784-HEA
                                   )
W. JOHNSON, et al.,                )
                                   )
      Defendants.            )

## <u>OPINION, MEMORANDUM AND ORDER</u>

This matter is before the Court on the application of self-represented Plaintiff Ronald K. Halkmon, Jr. to proceed in the district court without prepaying fees and costs. The Court will grant the application and assess an initial partial filing fee of $30.42. For the following reasons, the Court will order the Clerk of Court to issue process on Plaintiff's complaint as to Defendants W. Johnson, Donald James, Becky Fox, Lacy Dwyer, and Unknown Smith in their individual capacities. The Court will dismiss Plaintiff's claims brought against these Defendants in their official capacities. *See* 28 U.S.C. § 1915(e)(2)(B).

## **Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action without prepayment of fees and costs is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20

percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted his inmate account ledger from the Missouri Department of Corrections from December 4, 2024 to June 4, 2025. Based on this information, the Court determines his average monthly deposit is $152.09. The Court will charge plaintiff an initial partial filing fee of $30.42, which is twenty percent of his average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without full payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for

relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented litigants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

## The Complaint

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging Defendants deliberately delayed surgical treatment of his broken kneecap while incarcerated at the Potosi Correctional Center (PCC). Plaintiff names as Defendants W. Johnson (CO, PCC) , Donald James (Doctor, CMS), Becky Fox (HSA, CMS),

Lacy Dwyer (Nursing Director, CMS), and Unknown Smith (Caseworker, PCC). Plaintiff sues all Defendants in their individual and official capacities.

Plaintiff states that on July 31, 2024, he broke his kneecap falling from the top bunk of his cell and was transported to Mercy South Hospital for treatment. He returned to Mercy on August 7, 2024, and was examined by Dr. Austin, an orthopedic surgeon. Dr. Austin recommended that Plaintiff have his knee surgically repaired as soon as possible. In the meantime, he prescribed Plaintiff a knee brace and instructed him to keep his knee straight and to stay off it.

After his discharge, PCC medical staff interviewed Plaintiff and gave him a copy of his discharge papers. Despite Dr. Austin's orders, PCC staff sent Plaintiff back to his cell without any walking aid such as a cane, crutches, a walker, or a wheelchair. He returned to the same cell and bunk he fell from, a cell on the top level of the dormitory and a top bunk. PCC implemented a temporary order (lay-in) that Plaintiff's food tray should be delivered to him. At some point later, Defendants Johnson and Smith advised PCC medical staff that "if [he] can come up and down stairs that [he] was more than able to walk to the prison kitchen." Doc. 1 at 8.

On September 19, 2024, Plaintiff's lay-in was not renewed. He states that because he could not walk to the kitchen, "I was forced to beg and borrow food from other inmates which is against the rules that resulted in several physical altercations." Doc. 1 at 8.

Plaintiff states that over the next eight months he was "treated like a sub-human," and Defendant Smith obstructed all his attempts to receive aid. He alleges Smith refused all grievances he filed, or lost or threw them away. Smith "told me personally that he could 'care less' and that his staff would 'no longer' allow trays to be brought to my cell." Doc. 1 at 9. At some point, Plaintiff fell down the stairs and CO Johnson refused to declare the fall a medical emergency. Plaintiff's "emergency contact," Ella Bridges, phoned PCC medical staff for 30 days pleading to get Plaintiff food, a bottom bunk, and a lower level lay-in.

On December 20, 2024, Plaintiff returned to the hospital to see another orthopedic surgeon, Dr. Ruble. Dr. Ruble opined that the type of surgery recommended by Dr. Austin should have been scheduled immediately and that the surgery is complicated by time delays.

Between August 7, 2024 and October 15, 2024, Plaintiff's family members' telephone calls were "denied and ignored" and Plaintiff's health service requests (HSRs) were denied. Plaintiff was not given pain medication, and CO Johnson prevented Plaintiff from receiving food or placing him on a lower-level cell and a bottom bunk. The delay caused other issues, including Plaintiff's falls, head injuries, malnourishment, and abuse from other prisoners as a result of Plaintiff seeking their help. Doc. 1 at 12. Because he had to rely upon other inmates for food, he states he was attacked and "left to push my everyday welfare onto my family and friends outside." Doc. 1 at 6.

Plaintiff alleges that PCC medical staff, Dr. James, Becky Fox, and Lacy Dwyer, are personally responsible for the delays in his treatment and the "disregard for my injury that interfered with my daily activity, caused me chronic pain, and prevented me from defending myself from attacks or even 'running away' from my attackers." Doc. 1 at 11. He states that he has been rendered permanently handicapped. His knee joint had to be artificially rebuilt with pins and plates. Because of the delay in treatment, his knee was not able to naturally fuse back together. He states he can no longer work, run, or enjoy everyday activities. Doc. 1 at 6.

For relief, Plaintiff seeks $300,000 in actual and punitive damages.

## Discussion

I. **Deliberate Indifference to Serious Medical Need—Defendants Donald James (Doctor, CMS), Becky Fox (Administrator, CMS), and Lacy Dwyer (Nurse, CMS)**

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997). To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). In

other words, whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall v. Ramsey Cnty.*, 801 F.3d 912, 920 (8th Cir. 2015).

With regard to the objective prong, a "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  As to the subjective prong, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021).  "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).  Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication.  *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995); *see also Davis v. Buchanan County, Mo.*, 11 F.4th 604, 624 (8th Cir. 2021).

On August 7, 2024, Dr. Austin recommended that Plaintiff have surgery to repair his kneecap as soon as possible.  Surgery was delayed by 8 months by PCC medical staff, without explanation.  Doc. 9 at 4.  Plaintiff alleges Dr. James, Becky Fox, and Lacy Dwyer, all "high ranking medical personnel" at Centurion, delayed hospital visits and surgery.  The Court finds Plaintiff has stated a plausible claim

against Defendants James, Fox, and Dwyer for deliberate indifference to serious medical needs. The Court will issue service on these Defendants in their individual capacities.

## II.  Conditions of Confinement—Defendants W. Johnson (CO) and Unknown Smith (Caseworker)

Additionally, the Court finds Plaintiff has stated a plausible claim against Defendants Johnson and Smith for constitutional violations arising out of their cancellation of Plaintiff's lower-floor, lower-bunk lay-in and cancellation of his food delivery. Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). As such, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). To that end, prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998).

To allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation "by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The constitutional question regarding prison

conditions and confinement is whether the defendant "acted with deliberate indifference." *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016). A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id.* at 644.

Plaintiff alleges Defendants Johnson and Smith deliberately interfered with his medical treatment by not assigning him a bottom bunk on a lower level and by not renewing his food tray lay-in. Because of his higher-level cell and top bunk assignment, he sustained falls down stairs and head injuries. Additionally, he could not walk to the kitchen and food trays were no longer delivered, so Plaintiff had to beg and borrow food from other inmates, which resulted in several "physical altercations." The Court finds Plaintiff has stated a plausible claim against Defendants Johnson and Smith for unconstitutional conditions of confinement. The Court will issue service on these Defendants in their individual capacities.

## III.    Official Capacity Claims

Plaintiff sues all Defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007)). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) ("A

plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer[.]").

Here, Plaintiff alleges Defendants Johnson and Smith are employees of the Missouri Department of Corrections. As such, the official capacity claims against them are claims against the State of Missouri, their employer. The claims against the State of Missouri fail because it is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, to the extent that Plaintiff is seeking monetary damages, Plaintiff's official capacity claims against the MDOC employees must be dismissed.

Plaintiff alleges Defendants James, Fox, and Dwyer are employees of Centurion Medical Services, so the official capacity claims against them are against Centurion, which is a corporation. "A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Stearns v. Inmate Servs Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of

state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").  Plaintiff has not alleged any constitutional violation resulting from a policy, custom, or official action of Centurion.  His official capacity claims against James, Fox, and Dwyer will be dismissed.

## Motion to Supplement Record

Plaintiff has filed a motion to supplement the record to include additional claims of deliberate indifference and retaliation following his surgery.  Doc. 12.  He states that as a result of his filing his lawsuit, PCC's "current administration" is retaliating against him.  He had surgery in early 2025, and was discharged from the PCC infirmary on June 20, 2025.  His discharge included a lower-floor and lower-bunk mandate and use of a walker.  His walker was lost and he has been unable to walk to the kitchen to eat.  He also complains that medical release forms mailed to him from the SLU Law Clinic have not been delivered.

Plaintiff has not alleged which, if any, of the named Defendants are personally responsible for these supplemental allegations.   For this reason, his motion to supplement the record will be denied as futile.

## Motion for Appointment of Counsel

Finally, Plaintiff has filed a motion to appoint counsel. The motion will be denied at this time.  In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir.

2013).  Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time.  Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court.  Additionally, neither the factual nor the legal issues in this case appear to be complex.  The Court may consider future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**.  [Doc. 2]

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $30.42 within **thirty (30) days** of the date of this order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to

include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process upon the complaint as to Defendants W. Johnson and Unknown Smith in their individual capacities pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process upon the complaint as to Defendants Donald James, Becky Fox, and Lacy Dwyer in their individual capacities pursuant to the service agreement the Court maintains with Centurion.

**IT IS FURTHER ORDERED** that Plaintiff's claims brought against all Defendants in their official capacities are **DISMISSED** without prejudice under 28 U.S.C. § 1915(e)(2)(b).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED** without prejudice.  [Doc. 4]

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement the record is **DENIED**.  [Doc. 12]

An Order of Partial Dismissal will accompany Opinion, Memorandum and Order.

Dated this 13th day of January, 2026.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE